[No. 1865]

## FIRST NATIONAL BANK OF GOLDFIELD, NEVADA (a Corporation), Appellant, v. J. T. MURPHY, Respondent.

1. Attachment—Grounds—Surrender of Security.

Stats. 1869, c. 112, sec. 123, as amended by Stats. 1907, c. 58, authorizes an attachment in an action on an unsecured contract, for the direct payment of money, and, if so secured, when such security has been rendered nugatory by the act of the defendant. In an action on a note secured by certain stock, an attachment was issued on an affidavit, which, after setting out the making of the note and defendant's failure to pay it, recited that it was secured by 50,000 shares of stock which were afterwards surrendered and placed in escrow by defendant and rendered nugatory. Defendant applied to dissolve the writ and filed affidavit that plaintiff accepted the stock certificate as security for the note, and at all times had retained the same as such security, that it had never been surrendered, and was still held as security for the indebtedness. Plaintiff, in opposition to the motion to dissolve, alleged that, after the certificate was delivered, it had never been transferred on the books of the company, and was later withdrawn from plaintiff and placed in escrow under an agreement for sale; either the proceeds or the certificate to be returned to plaintiff. *Held*, that such escrow agreement, if carried out, would enable plaintiff to deduct the proceeds of the stock from the note and interest, and hence it did not render the security nugatory, so as to justify an attachment.

APPEAL from the District Court of the Seventh Judicial District of the State of Nevada, Esmeralda County, *Theron Stevens*, Judge.

Action by the First National Bank of Goldfield against J. T. Murphy. From an order dissolving an attachment, plaintiff appeals. **Affirmed.**

The facts sufficiently appear in the opinion.

*Thompson, Moorehouse & Thompson*, for Appellant:

Our statute, different from the statutes of other states, makes the requisite of the affidavit the existence or non-existence of security, at the time of making the affidavit. If the attaching creditor once had security, but at the time of making the affidavit he has none, then the affidavit is good. The words "and if so secured, when such

security has been rendered nugatory by the act of the defendant" has reference to an *ex*-security at the time of making the affidavit; but when there was once security, but at the time of attaching there is no security at all, then these words are not necessary in the affidavit.

But our statute does not deal with any past fact of security, unless the plaintiff still retains the security, and if he has not the security, then he can attach, and he need not put any statement in his affidavit concerning security at all, and, if he does, such statement neither adds to nor destroys the validity and legality of the affidavit.

While it is true that an attachment is statutory and the statute must be strictly pursued, it must be apparent that in this state a more liberal construction must prevail in interpreting our law as to what the contents of the affidavit shall be, because the clerk issues the writ, and, his duty being ministerial, he cannot be supposed to require the repetition of everything set out in some other section of the statute, while in these other states the clerk knows just what the affidavit must contain, because the statute tells him, word for word. Now, as our law does not repeat the language of the grounds upon which an attachment may be obtained as necessary for the affidavit, the omission from the affidavit of some part of the language of the grounds upon which an attachment may be had does not destroy the validity or legality of the affidavit, and so it is held (*Bowers* v. *Beck,* 2 Nev. 139) that strictness in the form of the affidavit should not be required, because the defendant is protected by the bond. So, while the rule of strict construction prevails in states where the law provides exactly what must be in the affidavit, no such rule prevails in this state, because here the law does not set out what the affidavit must contain specifically, but leaves it to the judgment of the clerk, who has no judicial powers, but only acts in a ministerial capacity.

But, further, it will be seen that Comp. Laws, 3219, was amended in 1887 (Stats. 1887, 55), and that before such

amendment (Stats. 1869, 214), the law required these facts, to wit: "and that the payment of the same has not been secured by any mortgage, lien or pledge upon real or personal property situate or being in this state, or, if so secured, that said security has been rendered nugatory by the act of the defendant," to be set out in the affidavit. Why strike these things out of the affidavit? Is the legislature to be looked upon as doing a useless act? Or did the legislature have a purpose in so doing? And at the time of this amendment in 1887, so far as this ground of attachment is concerned, the law was the same as now. This ground of attachment has never been changed. Manifestly the legislature did not intend these words above quoted to be in the affidavit—that the affidavit should be sufficient without them—but, following the rule laid down in *Bowers* v. *Beck, supra,* that the form of the affidavit was immaterial, because the defendant was protected by the bond, so that if in the end the plaintiff should not recover in the action, the defendant is fully protected; but that if the plaintiff should recover, then his rights should not be defeated by a dissolution of the attachment, because of the technicality of the affidavit.

But, be that as it may, still our law (Stats. 1907, 105) fixes definitely the class of security: First, mortgage; second, lien; third, pledge. The security, therefore, must be either a mortgage, a lien, or a pledge, and must exist, whether valuable or not, when the attachment is sought. This is certainly our statute. Now the record shows that the plaintiff did not have a mortgage or a lien of any kind. But when the debt of $6,000 was contracted plaintiff took into its possession 50,000 shares of stock, and held the same as a pledge, but later the plaintiff consented, by some agreement between defendant Murphy and one Brady, that Murphy, the defendant and pledgor, should take the stock and place the same in escrow, which was done. There is no dispute as to that being the fact. This destroyed the pledge. This was an act of the defendant. Our statute says: "rendered nugatory by the act of the defendant." It says nothing about the act of

the plaintiff, as does California and Montana. Now when the defendant has the 50,000 shares of stock put in an escrow, and the plaintiff is not the grantee, but the depositary, the pledge ends, because the possession as pledgee is gone from the plaintiff.

Therefore it is impossible for this certificate for 50,000 shares of stock to pass into an escrow without surrendering up and yielding the possession and terminating the pledge, for an escrow is the delivery of the stock to a third person, to be delivered by him to some grantee or assignee upon the performance of some condition or event.

Murphy did not need the physical possession of the stock to create the escrow. The fact that the bank so consented, and the act of the bank in putting the stock into an envelope under the written instructions of Murphy and Brady made the bank Murphy's agent, so that in that behalf the law created a surrender of possession by the bank to Murphy for the purpose of the escrow, and the pledge terminated. There was then no mortgage, no lien, and no pledge as security to the bank for the $6,000 note of the defendant.

*Robert L. Hubbard,* for Respondent:

The only question which need be considered is: Did he allege in his affidavit that the debt sued upon was not secured by a mortgage, lien or pledge upon real or personal property situated or being in this state? And if so secured did he allege that such security had been rendered nugatory by the act of the defendant?

If plaintiff had alleged that the debt was not secured by mortgage, lien or pledge his affidavit would have been sufficient. If, having shown that at some time it was secured, he had alleged that that security had been rendered nugatory by the act of the defendant, his affidavit would be sufficient.

Has he alleged in his affidavit what would be sufficient under either of these provisions of the statute?

Our contention is that he has not, because stating that "the same was secured by 50,000 shares of stock, which

were afterwards surrendered, and placed in escrow by said defendant, and rendered nugatory," amounts to nothing except in so far as it relates to the security which at some time existed by reason of the lien and pledge upon that particular 50,000 shares of stock, and we may safely accept the contention of counsel with respect to the effect of that stock being placed in escrow, without the slightest danger to our position, for the simple reason that whatever was done with that 50,000 shares of stock can, by no stretch of construction or imagination, convert the allegation above quoted into an allegation "that the debt was not secured by a mortgage, lien or pledge," and, for all that is disclosed by the affidavit, the plaintiff may have been secured in many other ways for the same debt. Indeed, the allegation of the affidavit appears upon its face to be more of an evasion of the statutory requirement than an attempt to comply with the statute.

By the Court, NORCROSS, J.:

This is an appeal from an order dissolving an attachment. Action was brought by the appellant against the above-named respondent to recover upon a promissory note. At the time the complaint was filed a writ of attachment was issued, based upon an affidavit, which, after setting out the making of a certain promissory note and the failure of the defendant to pay the same, recited "that the same was secured by 50,000 shares of stock, which were afterwards surrendered and placed in escrow by said defendant, and rendered nugatory."

The defendant moved to dissolve the attachment upon the ground of insufficiency of the affidavit upon which it was based, and in support of the motion to dissolve also filed an affidavit in which he alleged the making of the note sued upon and the delivery to the defendant of certificate No. 80 of the Great Western Gold Mining and Milling Company for 50,000 shares of its capital stock as security for the payment of the amount specified in the note; that the plaintiff accepted such certificate of stock as security for the payment of said note; that at all

times since the indorsement and delivery of said certificate of stock the said plaintiff has held and retained the same as such security; that said certificate has never at any time been surrendered to or otherwise delivered to defendant by the plaintiff or by any one else; that, at the time of the issuance of said writ of attachment, said certificate of stock was so held as security for the payment of said indebtedness, and for no other purpose; that the affidavit on attachment is false and untrue in so far as it states or pretends to state that said stock was ever surrendered to the defendant or that said security was ever rendered nugatory.

In opposition to the motion to dissolve, an affidavit on behalf of the plaintiff, made by the cashier of the bank, among other things, recites: "That to secure the payment of said note the said defendant delivered to plaintiff stock certificate No. 80, showing that defendant was the owner of 50,000 shares of the capital stock of the Great Western Gold Mining and Milling Company. That no transfer of the stock represented by said certificate was made to this plaintiff upon the books of said mining company, or otherwise, except as above set forth. That on or about the 12th day of June, 1909, said defendant withdrew said certificate No. 80 from plaintiff as such security and placed the same in escrow. That said certificate of stock and the stock represented by the same was by agreement of said defendant placed in said escrow by agreement with one S. H. Brady, by the terms of which said Brady was to pay certain specified sums of money for the use of defendant and others, and upon such payments said stock was to be delivered to said S. H. Brady. But in case said payments were not made then said escrow directed as follows: 'In case any of the above payments are not promptly paid, the contents are to be returned to the grantors, on demand, within thirty days of such default, upon the payment of charges, and the bank's responsibility for the custody hereof ceases at the expiration of said thirty days. No assignment or transfer of this escrow can be made, but contents may be withdrawn by

mutual consent.'   That at the time said certificate No. 80 was placed in said escrow the said defendant delivered to plaintiff the following order, to wit: 'Goldfield, Nevada, June 11, 1909.   First Nat. Bank, Goldfield, Nevada— Dear Sir:  I hereby authorize you to deduct such sums of money from a certain escrow between S. H. Brady and J. T. Murphy *et al.* as may be coming to me for my proportion of same to the extent of six thousand dollars and interest, the amount of a certain note which I owe to you. Yours truly, John T. Murphy.'   That said Brady did not make the payments specified in said agreement or option, and said certificate No. 80 still remains in said escrow."

The ground upon which the attachment was based is the first cause specified in section 123 of the old practice act (Stats. 1869, c. 112), as amended (Stats. 1907, p. 105), which recites:  "In an action upon a judgment or upon a contract, expressed or implied, for the direct payment of money, which is not secured by mortgage, lien or pledge upon real or personal property, situated or being in this state, and if so secured when such security has been rendered nugatory by the act of the defendant."   Section 124 of the same act provided:   "The clerk of the court shall issue the writ of attachment upon receiving and filing an affidavit by or on behalf of the plaintiff showing the nature of the plaintiff's claim, that same is just, the amount which the affiant believes the plaintiff is entitled to recover, and the existence of any one of the grounds for an attachment enumerated in the preceding section."

Considering the affidavit on attachment alone, it does not specifically allege that the note sued upon was not at the time the suit was instituted secured by a mortgage, lien, or pledge.   So far as appears from the affidavit, the note may have been otherwise secured than by the stock certificate described.   If we consider the affidavit as alleging the giving of security which has subsequently been rendered nugatory by act of the defendant, it fails in this respect to comply with the requirements of the statute.   If the placing of the stock certificate in escrow

rendered the security nugatory, the plaintiff was as much the cause thereof as the defendant, for the plaintiff, holding the certificate of stock as a pledge, had to consent to any modification of the conditions of its security.

When we consider the affidavits in support of and in opposition to the motion to dissolve, it cannot be said, we think, that the security originally given was ever rendered nugatory by act of the defendant. Plaintiff continued to hold possession of the stock certificate under the escrow agreement, which agreement, if carried out, would enable the plaintiff to deduct the amount of its note with accrued interest and costs from the payments paid in accordance with the escrow agreement. If the escrow agreement was not carried out, the plaintiff still held the stock certificate as security for the payment of the note.

The order appealed from is affirmed.